UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TAYLOR DEVICES, INC.,

                        Plaintiff,

      v.

WALBRIDGE ALDINGER COMPANY,
THE WALBRIDGE GROUP, INC., and
WALBRIDGE de MEXICO, S.A. de C.V.

                    Defendants.

**REPORT
and
RECOMMENDATION**

**07-CV-153A(F)**

APPEARANCES:        HISCOCK & BARCLAY LLP
                              Attorneys for the Plaintiff
                              MICHAEL E. FERDMAN, and
                              NICHOLAS J. DiCESARE, of Counsel
                              1100 M&T Center
                              Three Fountain Plaza
                              Buffalo, New York    14203-1486

                              GIBSON, MCASKILL & CROSBY
                              Attorneys for Defendants
                              TIMOTHY J. GRABER, of Counsel
                              69 Delaware Avenue, Suite 900
                              Buffalo, New York   14202

## JURISDICTION

This action was referred to the undersigned by Hon. Richard J. Arcara for all

pretrial matters on April 23, 2007. The matter is presently before the court on

Defendants Walbridge Aldinger Company and The Walbridge Group, Inc.'s motion to

dismiss for lack of personal jurisdiction, filed April 20, 2007 (Doc. No. 5), and Defendant

Walbridge de Mexico, S.A. de C.V.'s motion to dismiss for lack of personal jurisdiction

and *forum non conveniens*, filed April 20, 2007 (Doc. No. 7) ("Defendants' motions").

**BACKGROUND**

Plaintiff ("Plaintiff" and "Taylor") commenced this action on March 31, 2007 alleging a breach of contract and requesting damages including storage costs and interest.  As noted, Defendants Walbridge Aldinger Company ("Walbridge Company") and The Walbridge Group, Inc.'s ("Walbridge Group") motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), in lieu of answers, were filed on April 20, 2007, together with a Memorandum of Law in Support of Walbridge Company and Walbridge Group's Motion to Dismiss (Doc. No. 5-2) ("Walbridge Company and Walbridge Group Memorandum"), including the affidavits of Scott Kameg, Assistant Vice-President of Walbridge Company ("Kameg Affidavit"), Thomas Dyze, Vice-President and General Counsel of Walbridge Company ("Dyze Affidavit"), and Exhibit A, an untranslated document in Spanish, ("Defendants Walbridge Company and Walbridge Group's Exhibit A").  Defendant Walbridge de Mexico, S.A. de C.V.'s ("Walbridge Mexico") motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and upon *forum non conveniens*, was filed on April 30, 2007, in lieu of answer, together with a Memorandum of Law in Support of Walbridge de Mexico, S.A. de C.V.'s Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens (Doc. No. 7-2) ("Walbridge Mexico Memorandum"), including the Declaration of Jose Jesus Haro-Martinez, Walbridge Mexico's General Director (Doc. No. 7-3) ("Haro-Martinez Declaration") and Exhibit A (Doc. No. 7-4) a contract written in Spanish between Walbridge Mexico and Distribuidora de Implementos Sismoresistentes, S.A. de C.V. ("DIS"), a nonparty, ("Walbridge Mexico Exhibit A and Exhibit B, an English translation of Walbridge Mexico's Exhibit A ("Walbridge Mexico Exhibit B")) (Doc. No. 7-5).

2

In opposition to Defendants' motions, Plaintiff filed, on May 29, 2007, the Affidavit of Douglas P. Taylor, Plaintiff's president ("Taylor Affidavit") (Doc. No. 15), together with Exhibits A - G ("Taylor Affidavit Exh(s). ___"), the Affidavit of Michael E. Ferdman, Esq. ("Ferdman Affidavit") (Doc. No. 16), together with Exhibits A - C ("Ferdman Affidavit Exh(s). ___"), and a Memorandum of Law in Opposition to Motions to Dismiss ("Plaintiff's Memorandum") (Doc. No. 17).

On June 15, 2007, Defendants filed a Reply to Plaintiff's Response to Defendants' Motions ("Defendants' Reply") (Doc. No. 19), together with the Declaration of Jose Jesus Haro-Martinez, dated June 14, 2007, ("Haro-Martinez Reply Declaration"), and Exhibits A - D ("Defendants' Reply Exh(s). ___").  At the court's request, Plaintiff submitted, on October 3, 2007, a letter from Plaintiff's attorney, Mr. Ferdman, together with an English translation of Taylor Affidavit Exh. G, stating that no terms or conditions appear on the reverse side of Taylor Affidavit Exhs. B, D, and G (Doc. Nos. 22, 23, respectively).  Oral argument was deemed unnecessary.

Based on the following, Walbridge Company's motion should be DISMISSED as moot, Walbridge Group's motion should be GRANTED; and Walbridge Mexico's motion should be DENIED.

## FACTS[1]

A New York corporation, with its principal place of business in North Tonawanda, New York, within this district, Taylor designs and manufactures motion dampers for

---

[1] Taken from the pleadings and papers filed in this action.

various uses including protecting commercial buildings against the destructive effects of earthquakes.  Taylor Affidavit ¶ 6; Walbridge Company and Walbridge Group Memorandum at 3 n. 1.  Since June 1995, DIS served as Taylor's exclusive sales representative in Mexico.  Taylor Affidavit ¶¶ 7, 26; Taylor Affidavit Exh. A at 1.  DIS represents and sells other manufacturers' products and services in Mexico, including seismic effects suppression products made by Taylor's competitors.  Taylor Affidavit ¶ 8; Ferdman Affidavit ¶ 17; Taylor Affidavit Exh. at 2 ¶ D.  Taylor exercises no control over DIS, and DIS had no authority to make contracts on behalf of Taylor.  Taylor Affidavit ¶¶ 7, 26.

Walbridge Company and Walbridge Group are Michigan corporations headquartered in Detroit, Michigan at a common office address.  Dyze Affidavit ¶¶ 2-3. Walbridge Company is a construction company that operates as a general contractor with offices in Ohio, Indiana and Florida.  *Id.*; Dyze Affidavit ¶¶ 5, 7.  Walbridge Company is authorized by the New York Secretary of State to do business in New York State ("New York").  Ferdman Affidavit ¶ 3; Ferdman Affidavit Exh. A.  All the stock of Walbridge Company is owned by Walbridge Group.  Dyze Affidavit ¶ 4; Ferdman Affidavit ¶ 21.  Walbridge Group also owns all of the shares of Walbridge International, Inc. ("Walbridge International"), a nonparty; Walbridge International owns 80% of the stock of Walbridge Mexico.  Dyze Affidavit ¶ 4; Ferdman Affidavit ¶ 21.  The balance of Walbridge Mexico's shares are owned by individual investors located in Mexico.  Dyze Affidavit ¶ 4.  Walbridge Group does not conduct business in New York, has no property, offices, or employees in New York, and derives no revenue from any goods used in New York or services rendered in the state.  Dyze Affidavit ¶¶ 6, 9.

4

Walbridge Mexico operates with its own capital, personnel, and projects.  Kameg Affidavit ¶ 6.  Walbridge Mexico acts as a sub-contractor for Walbridge Company when Walbridge Company requires such assistance in connection with construction projects in Mexico to be carried out by Walbridge Company.  Haro-Martinez Declaration ¶¶ 2-3.  Some of the officers and directors of Walbridge Company are also officers and directors of Walbridge Mexico.  Walbridge Company and Walbridge Group Memorandum at 17.  Neither Walbridge Company nor Walbridge Group, however, have any ownership interest in Walbridge Mexico, and Walbridge Company and Walbridge Group "have little control over [Walbridge Mexico's] day to day operations."  Haro-Martinez Declaration ¶ 3; Dyze Affidavit ¶ 19 (Walbridge Company has "little, if any, control" over Walbridge Mexico's operations) (bracketed material added).[2]  Walbridge Mexico is financially independent of Walbridge Company, Walbridge Group, and Walbridge International, and, using its own officers and employees, operates "without interference from" Walbridge Group or Walbridge Company, including by use of its own marketing and accounting departments.  Dyze Affidavit ¶ 19; Haro-Martinez Declaration ¶ 3.  Walbridge Mexico has no offices, property, bank accounts, or employees in New York.  Haro-Martinez Declaration ¶ 4.  Walbridge Mexico's only contact with New York "is through its relationship with" Taylor based on Walbridge Mexico's designation of DIS to obtain the dampers from Taylor.  *Id.*

In July 2003, DIS contacted Taylor regarding the possible manufacture by Taylor of seismic dampers for the Twin Towers project ("the dampers"), two tall apartment

---

[2] Unless otherwise indicated, all bracketed material within cited quotations are added.

buildings to be constructed by Walbridge Mexico in Mexico City, Mexico ("the project"). Taylor Affidavit ¶¶ 7-8; Haro-Martinez Declaration ¶ 6; Defendants' Reply Exh. A.  The dampers were to be designed specifically for the project, and manufactured at Taylor's facility in New York.  Taylor Affidavit ¶ 7; Ferdman Affidavit ¶ 12; Haro-Martinez Declaration ¶ 6.  Negotiations relating to this proposed transaction were conducted by Taylor from its New York office using telephone and facsimile communications with DIS acting as its sales representative in Mexico.  Taylor Affidavit ¶ 11.  Walbridge Mexico conducted its discussions regarding purchase of the dampers with DIS personnel in Mexico, Haro-Martinez Reply Declaration ¶ 8, and did not communicate directly with Taylor.  *Id.*  Walbridge Mexico was assisted during an inspection of the dampers at Taylor's facility in New York by Scott Kameg, Assistant Vice President of Walbridge Company ("Kameg"), in May 2004, along with Walbridge Mexico representatives and project staff.  No representatives of the Walbridge Company were involved in the negotiations leading to Walbridge Mexico's written agreement with DIS on January 22, 2004 and a purchase order issued by Walbridge Mexico to Taylor for the dampers, also dated January 22, 2004.  Haro-Martinez Reply Declaration ¶ 8.

On December 11, 2003, DIS submitted to Walbridge Mexico, on DIS letterhead, a revised budget for purchase of the dampers by Walbridge Mexico.  Defendants' Reply Exh. A ("the DIS proposal").  The DIS proposal referred to an earlier, July 11, 2003, pricing schedule for the dampers, and stated that a 7% discount on the total price of $ 1,167,130 would be offered to Walbridge Mexico upon the ordering of the dampers and that the dampers were to be accepted by a Walbridge Mexico engineer after testing at Taylor's facilities in New York, in accordance with Taylor's policies.  Defendants' Reply

Exh. A at 14.  Shipment of the dampers from New York was to be F.O.B. at the project site in Mexico City.[3]  *Id.* at 15.  A down payment of 50% of the total price, which included value added taxes but excluded installation costs, was also required by the DIS proposal and five subsequent bi-monthly payments with a final payment 15 days before delivery.  *Id.*  According to the DIS proposal, billings for each of the required payments were to be issued to Walbridge Mexico by DIS.  *Id.* at 16.

DIS provided Taylor with Walbridge Mexico's specifications for the dampers and, in response, Taylor prepared and submitted, on December 19, 2003, another proposal to DIS "for submission to" Walbridge Mexico, dated December 17, 2003, for the manufacture and sale of eight dampers, four dampers for each building in the project, in the amount of $864,000 (U.S.), exclusive of taxes and costs of importation.  Taylor Affidavit ¶ 8; Taylor Affidavit Exh. B ("the Taylor proposal").  The Taylor proposal called for payments in the amount of 50% of the sale price at the time of order, and five bi-monthly progress payments for the balance.  Taylor Affidavit Exh. B.  In the Taylor proposal, shipment was stated as "F.O.B. Origin," *i.e.*, Taylor's manufacturing facilities in New York.  *Id*.

On December 19, 2003, DIS received, in Mexico, from Walbridge Mexico a letter of intent, signed by Mr. Haro-Martinez, General Director of Walbridge Mexico, stating Walbridge Mexico's "intention [is] to acquire" the dampers to be "manufactured by Taylor" subject to unspecified conditions and guarantees.  Taylor Affidavit ¶ 9; Taylor

---

[3]"F.O.B." means "free on board" and identifies the location to which the seller is required to ship or transport the goods, while bearing the expense and risk of loss, *e.g.*, "place of origin," or "work site."  Title to goods usually passes from seller to buyer at the F.O.B. designated location.  U.C.C. § 2-319(1) (2004).

Affidavit Exh. C ("the Letter of Intent").[4]

In response to the Letter of Intent, on December 29, 2003, Taylor sent to Walbridge Mexico a sales order dated December 29, 2003, detailing the schedule for design, production and testing of the dampers, as well as a new payment schedule which called for three installment payments starting with a $260,900 payment due March 31, 2004. Taylor Affidavit ¶ 10; Taylor Affidavit Exh. D ("the Sales Order"). The Sales Order stated that the dampers were being sold and invoiced to Walbridge Mexico for a total price of $ 864,000. Taylor Affidavit Exh. D at 5. According to the Sales Order, shipment of the dampers was to be "F.O.B.: El Paso, Texas." *Id.*

By letter to DIS, from Mr. Haro-Martinez, dated January 14, 2004, Walbridge Mexico assigned to DIS the "acquisition" of the dampers for the project to be "manufactured by Taylor" with required installment payments, including an initial payment of one-third of the purchase price upon "signing of the contract" and maximum delivery periods for the dampers. Defendants' Reply Exh. B ("the Walbridge Mexico January 14, 2004 Letter"). By letter dated January 21, 2004, DIS submitted to Walbridge Mexico a "<u>FINAL</u> budget" for the dampers in the amount of $1,035,000 including a "VAT" of $135,000 (U.S.), excluding installation costs. Defendants' Reply Exh. C[5] ("DIS Final Budget") (uppercase lettering and underlining in original). In the DIS Final Budget, DIS stated it would be responsible for installation of the dampers at the project site. *Id.* at 2. In this letter, DIS stated an "advance" $300,000 payment was due

---

[4] Although the handwritten English translation of the Letter of Intent attached to Taylor Affidavit Exhibit C is not certified as accurate, the parties do not dispute its accuracy.

[5] Defendants' Reply Exh. C includes an executed version of the letter in Spanish, and an English translation.

at signing of the "contract," and an "initial" payment of $300,000 was due 14 weeks

thereafter. *Id.* at 3.[6]  Billings for the payment were to be issued by DIS. *Id.*  In contrast

to the Taylor Proposal and the Sales Order, according to the DIS Final Budget,

shipment was to be F.O.B. "City of Mexico." *Id.*

On January 22, 2004, Walbridge Mexico and DIS executed a contract

designating DIS as Walbridge Mexico's "sub-contractor" for the "supply," testing,

importation and installation by DIS of the dampers for the project.  Walbridge Mexico

Exh. A (original document in Spanish), and Walbridge Mexico Exh. B (English

translation) ("the Walbridge Mexico-DIS Agreement" or "the Agreement") at 1.  An

addendum to the Agreement, dated January 30, 2004 ("the Addendum"), called for a

payment to Taylor of $300,000 (U.S.) by Walbridge Mexico "after the signature of this

contract," and two subsequent payments to Taylor of $250,000 on May 8, 2004 and

October 9, 2004, respectively.  Addendum at 4; Haro-Martinez Declaration ¶ 9.  The

Addendum also provided that DIS, acting in its "capacity as exclusive representative" for

Taylor in Mexico, would develop and supply the dampers.  Walbridge Mexico's Exhibit B

at 4.  The Addendum further stated that DIS's responsibilities were dependent upon

Walbridge Mexico making specified payments to Taylor, *id.* at 5, that "interpretation" and

"compliance" issues arising on the Agreement and Addendum were to be submitted to

"competent courts in Mexico City," and that both parties expressly submitted to the

Mexican court's jurisdiction.  *Id.*  At Taylor's request, Walbridge Mexico also issued to

Taylor a purchase order, dated January 22, 2004, but received by Taylor on August 24,

---

[6]  Defendants' Reply Exhibit D appears to be identical to Exhibit C.  No specific explanatory
information regarding these letters is provided by Defendants.

2004, for the dampers in the amount of $ 864,000, less a $ 44,000 discount ("the

Purchase Order").[7]  Taylor Affidavit ¶¶ 23, 28; Taylor Affidavit Exh. G; Haro-Martinez

Reply Declaration ¶ 9.[8]  Walbridge Mexico was required to pay to DIS $ 50,000 to cover

the costs of shipping and supervision of installation of the dampers to each tower, and $

135,000 to cover the value added tax.[9]  *Id*.  The Purchase Order indicates an address in

Mexico as the "Place of Delivery" for the dampers.  Purchase Order at 1.

By e-mail, dated February 11, 2004, Mr. Haro-Martinez explained to DIS that the

initial $300,000 payment to be paid to Taylor for the dampers as required by the

Walbridge Mexico-DIS Agreement, the Addendum, and the Purchase Order, was

overdue because of delay in a transfer of funds to Walbridge Mexico from Walbridge

Company in Michigan.  Taylor Affidavit Exh. E; Haro-Martinez Reply Declaration  ¶¶ 5-6.

Taylor did not receive the initial $300,000 payment from Walbridge Mexico until

February 23, 2004, when Walbridge Mexico wire-transferred the payment to Taylor's

bank account in New York.  Taylor Affidavit ¶¶ 13-14; Haro-Martinez Reply Declaration

¶ 5.

After inspecting and testing of the dampers at Taylor's facility in New York, on

May 26, 2004, Walbridge Mexico representatives, including Kameg, who had been

---

[7] Although a copy of the Purchase Order, written in Spanish, was filed as Taylor Affidavit Exh. G, references to the Purchase Order are to the English translation of the document, filed on October 3, 2007 (Doc. No. 23).

[8] In contrast to the Letter of Intent, the Walbridge Mexico January 14, 2004 Letter, and the Purchase Order, the DIS Final Budget, the DIS proposal, the Walbridge Mexico-DIS Agreement, and the Addendum refer to the dampers as "shock absorbers."  The court nevertheless treats the terms as equivalents for the purpose of this Report and Recommendation.

[9] The record does not explain the nature of this tax.

"loaned" to Walbridge Mexico by Walbridge Company to assist Walbridge Mexico in performing such inspection and testing, accepted the dampers.  Taylor Affidavit ¶ 16; Kameg Affidavit ¶¶ 4-6.[10]  At the meeting, the parties discussed "a purchase order," and Taylor raised the possible need for a letter of credit to assure future contract payments from Walbridge Mexico.  Taylor Affidavit ¶¶ 16-17.  According to Taylor, in response, Kameg represented that Walbridge Mexico was a "paper" or "shell" corporation, and that as Walbridge Company was the actual controlling entity for the project including acquisition of the dampers, no letter of credit was needed to guarantee any future payments to Taylor.  *Id*. ¶ ¶ 18, 20-22.  Based on Kameg's representations, Taylor did not insist that a letter of credit from Walbridge Mexico to secure future payments be obtained and, instead, demanded the Purchase Order be issued by Walbridge Mexico to "formalize" the "contract" with Taylor for purchase of the dampers.  *Id.* ¶¶ 16, 22, 28. Kameg denies making such statements, and recalls only that the technical aspects of Taylor's design and manufacture of the dampers was the main subject of discussion at the meeting, Kameg Affidavit ¶ 6, but does not deny that Walbridge Mexico's representatives found the dampers to be acceptable.  *Id.* (*passim*).  Mr. Haro-Martinez recalled that, as of the May 26, 2004 meeting, the Purchase Order had already been issued to DIS.  Haro-Martinez Reply Declaration ¶ 9.  Walbridge Mexico's representative, Raul Gonzalez Almarez, who attended the meeting, gave Mr. Taylor his business card showing his association with Walbridge Mexico as well as Walbridge Company's name and address in Detroit, but without showing an address in Mexico for

---

[10]  Walbridge Mexico states that the purpose of the meeting was to "observe progress on the [manufacture of] seismic dampers."  Haro-Martinez Reply Declaration ¶ 8.

Walbridge Mexico.  *Id.* ¶¶ 18-19, Taylor Affidavit Exh. F; Kameg Affidavit ¶ 6.

The Purchase Order which, according to Walbridge Mexico, had been prepared by Walbridge Mexico at the request of DIS in January 2004, Haro-Martinez Reply Declaration ¶¶ 7, 9, names Taylor as the supplier of the dampers to Walbridge Mexico, and includes the same payment schedule provided in the Addendum; however, the total purchase price, $800,000, stated in the Addendum is at variance with the price ($864,000) stated in the Sales Order and Purchase Order.  Purchase Order at 1; Addendum.  The Purchase Order also provided that delivery of the dampers for the first tower of the project was to occur on April 26, 2004; for the second tower, on September 27, 2005.  Purchase Order at 1.  Sometime later, for reasons unexplained in the record, the project was cancelled, and Walbridge Mexico failed to pay to Taylor the $520,000 balance due and take delivery of the dampers as stated in the Sales Order and the Purchase Order.  Taylor Affidavit ¶ 29.  No dampers were delivered to the project site in Mexico City, and the dampers are being stored at Taylor's expense which exceeds their value as "scrap."  Plaintiff's Memorandum at 6.  Neither the Letter of Intent, Sales Order, Agreement, Addendum, nor the Purchase Order provides for any right of cancellation or liquidated damages.  No affidavit from DIS has been submitted by either side.

## DISCUSSION

Defendants Walbridge Company, Walbridge Group and Walbridge Mexico ("Defendants") seek to dismiss the Complaint for failure to make a *prima facie* showing of personal jurisdiction.  Walbridge Company and Walbridge Group Memorandum at 9-22; Defendant Walbridge Mexico Memorandum at 5-13.  Walbridge Mexico also

requests that, should the court sustain Plaintiff's assertion of personal jurisdiction over Walbridge Mexico, the action against it be dismissed based on *forum non conveniens*. *Id.* 13-16.

Specifically, Defendants contend that they neither conduct business in New York, sufficient to establish jurisdiction pursuant to New York Civil Practice Law and Rules § 301, Walbridge Company and Walbridge Group Memorandum at 10-11; Walbridge Mexico Memorandum at 7, nor did any Defendant transact any business with Plaintiff in New York sufficient, pursuant to New York Civil Practice Law and Rules Section 302(a)(1), New York's long-arm statute, to support jurisdiction over them based on Plaintiff's claims as alleged in this action.  Walbridge Company and Walbridge Group Memorandum at 15; Walbridge Mexico Memorandum at 8-12.  In particular, Walbridge Company and Walbridge Group argue that in the absence of any evidence that Walbridge Mexico acts as an agent or functions as an *alter ego*, or a department, of either the Walbridge Company or Walbridge Group, neither is subject to personal jurisdiction in New York based on the activities of Walbridge Mexico in relation to the breach of contract alleged in this action, and that the record fails to support a contrary finding.  Walbridge Company and Walbridge Group Memorandum at 15-18.  Walbridge Mexico's alternate request for dismissal on *forum non conveniens* grounds is predicated upon the evidence in the record on the instant motions showing that the dispute arises upon an agreement between Walbridge Mexico and DIS, Mexican entities subject to Mexican law, the presence in Mexico of numerous witnesses needed for testimony concerning the events leading to the alleged agreement and breach, and the lack of public interest in New York in the resolution of such a dispute between foreign entities.

Walbridge Mexico Memorandum at 14-15.

Defendants maintain that although Walbridge Mexico "had a contractual relationship with Taylor," Walbridge Mexico Memorandum at 9; Haro-Martinez Declaration ¶ 4 ("Walbridge de Mexico's only contact with the State of New York is through its relationship with Taylor Devices, Inc."), based on the Walbridge Mexico - DIS Agreement and Addendum, Walbridge Mexico Exh. B, such agreement was exclusively between Walbridge Mexico and DIS, Walbridge Mexico Memorandum at 9, 14, and, as a result, "neither Walbridge Co. [*sic*] nor Walbridge Group has any contract with Plaintiff," sufficient to sustain personal jurisdiction over either entity in New York. Walbridge Company and Walbridge Group Memorandum at 20.  Defendants also argue that neither Walbridge Company nor Walbridge Group are subject to jurisdiction in New York based on any guarantee to make the required installment payments to Taylor as no writing evidencing such an agreement with either Defendant exists.  Walbridge Company and Walbridge Group Memorandum at 20-21 (citing N.Y. Gen. Oblig. Law §5-701 (requiring that an agreement to pay financial obligation of a third-party must be in writing)).

Walbridge Mexico maintains that negotiation and execution of the Walbridge Mexico-DIS Agreement and the Addendum for the "supply," delivery, and installation of the dampers occurred solely in Mexico and, as such, involved no contacts with New York sufficient to support the exercise of New York's long-arm jurisdiction over Walbridge Mexico based on these agreements.  Walbridge Mexico Memorandum at 9-12; Walbridge Mexico Exh. B at 1.  Rather, Walbridge Mexico maintains that because DIS, following execution of the Agreement and the Addendum in Mexico, "arranged for

14

Taylor Devices to provide . . . [the dampers]," DIS, not Walbridge Mexico, transacted business in New York for jurisdictional purposes. *Id.* at 12.   However, Walbridge Mexico acknowledges the Agreement and the Addendum contemplated that the required initial payment was to be made directly to Taylor by Walbridge Mexico, and provided that Walbridge Mexico was to "monitor [the] progress" of Taylor's production of the dampers at Taylor's manufacturing facility in New York.   Walbridge Mexico Memorandum at 9; Walbridge Mexico Exh. B.   Although Walbridge Mexico acknowledges that conducting such monitoring of Taylor's production of the dampers in New York is a "factor" relevant to whether Walbridge Mexico transacted business in New York for long-arm jurisdiction purposes, Walbridge Mexico does not concede that by making the initial payment to Taylor and conducting the inspection and "testing" of the dampers on May 26, 2004 at Taylor's facility in New York, Taylor Affidavit ¶ 16, it "directed" any activity "towards [*sic*] New York," or that it thereby "contracted to provide goods and services in New York." *Id.*  at 10.   Finally, Defendants maintain the exercise of *in personam* jurisdiction over any of them would violate federal due process protections.   Walbridge Company and Walbridge Group Memorandum at 18-22; Walbridge Mexico Memorandum at 10-13.

In opposition to Walbridge Company's contention that there is no basis for "exercise of general jurisdiction over Walbridge Company," Walbridge Company and Walbridge Group Memorandum at 11, Taylor demonstrated that the Walbridge Company is authorized to do business by New York, Plaintiff's Memorandum at 2, 7-8; Ferdman Affidavit Exh. A, and that because Walbridge Company has in fact conducted such business in New York, it is subject to general personal jurisdiction in New York for all litigation purposes in New York courts, including Taylor's claims in the instant action.

Plaintiff's Memorandum at 7-9 (citing *Erne Shipping, Inc. v. HBC Hamburg Bulk Carriers GMBH & Co. KG*, 409 F.Supp.2d 427, 435-36 (S.D.N.Y. 2006) (filing of application with New York Secretary of State to do business in New York sufficient to subject corporation to general jurisdiction of New York courts for any cause of action) (citing cases)).   Taylor also contends that based on the totality of the circumstances revealed in the record, Walbridge Mexico has transacted business in New York in connection with its procurement of the dampers that were to be custom-designed, manufactured, inspected and tested, and shipped by Taylor from New York to Walbridge Mexico for the project.  *Id.* at 10.   Taylor also denies it is a party to the Walbridge Mexico-DIS Agreement and the Addendum, or that DIS executed the Agreement and Addendum as Taylor's agent.  *Id.* at 11.   Taylor denies DIS had either actual or apparent authority to enter into any contract with Walbridge Mexico on Taylor's behalf.  *Id.* at 12.   Rather, Taylor maintains that following the May 2004, meeting at its facility in New York, with representatives of Walbridge Mexico to inspect and conduct testing of the dampers, Taylor Affidavit ¶ 16, in response to Taylor's request for financial assurances that future installment payments to Taylor would not be delayed, as was the initial $300,000 payment due in January but paid in February 2004, Walbridge Mexico submitted the Purchase Order to Taylor, dated January 22, 2004, in order to "confirm the agreement [for production of the dampers] between the parties."  Plaintiff's Memorandum at 10-11.  Taylor therefore maintains it contracted for the dampers "directly with" Walbridge Mexico.  *Id.* at 13.

Based on these contacts, Taylor argues Walbridge Mexico transacted business in New York, a sufficient jurisdictional predicate for this action seeking damages arising

from Walbridge Mexico's breach of a contract with Taylor for manufacture and shipment of the dampers, *i.e.*, Walbridge Mexico's failure to pay the $520,000 balance of the purchase price for the dampers after accepting them based on the May 2004 inspection and testing by Walbridge Mexico's representatives.  Plaintiff's Memorandum at 13.  Taylor further avers it was, prior to the instant motion, unaware of the Walbridge Mexico-DIS Agreement.  *Id.* at 11; Taylor Affidavit ¶ 24.  Taylor also denies that DIS had any authority, as Taylor's agent, to enter into the agreement with Walbridge Mexico, Plaintiff's Memorandum at 12-13; Taylor Affidavit ¶ 25.  Walbridge Mexico does not assert Taylor was aware, prior to its execution, of the provision in the contract designating Mexican courts as the venue for litigation of any dispute under the contract.  Walbridge Mexico Memorandum (*passim*); Defendants' Reply (*passim*).

Taylor also contends that Defendants operate as a "corporate combine," Plaintiff's Memorandum at 16 (citing *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 Fed. Appx. 195, 198 (2d Cir. 2005) (allowing liability upon multiple corporations where activities leading to fraud were "inexplicably confused"), and, based on the *alter ego* doctrine for establishing liability between entities, Plaintiff's Memorandum at 14-17, all Defendants, — Walbridge Company, Walbridge Group and Walbridge Mexico — are subject to personal jurisdiction in New York for purposes of this action.  *Id.*  In support of its "corporate combine" theory of personal jurisdiction over related entities, Taylor relies on the fact that Walbridge Group owns 100% of Walbridge Company, Plaintiff's Memorandum at 15, as well as 100% of Walbridge International which owns 80% of Walbridge Mexico.  *Id.*  Taylor also contends that the initial $300,000 payment received from Walbridge Mexico represented funds transferred, in February 2004, from

17

Walbridge Company to Walbridge Mexico, to enable Walbridge Mexico to make the payment, and demonstrates that Walbridge Mexico is a shell entity, without sufficient capital of its own, and, as such, is an *alter ego* of Walbridge Company.  *Id.*  Additionally, according to Taylor, Scott Kameg, while serving as an officer of Walbridge Company but acting on behalf of Walbridge Mexico, participated in the inspection and testing of the dampers at Taylor's facility in New York, and represented to Taylor that Walbridge Mexico was merely a "paper corporation" created to allow Walbridge Company to conduct business in Mexico, and that Walbridge Company, in reality, was "running the show."  *Id.*  Taylor also points to the fact that Kameg's business card, and that of Mr. Raul Gonzalez-Almarez, Walbridge Mexico's representative at the May 2004 meeting, tendered to Taylor at that time, show a common office address in Detroit, Michigan, Walbridge Company's principal place of business.  *Id.*  Taylor further represents that Walbridge Company performs marketing services for Walbridge Mexico, Plaintiff's Memorandum at 15, however, a review of the record, Ferdman Affidavit ¶ 26; Ferdman Affidavit Exh. C, does not reveal any evidence to support this assertion.[11]

According to Taylor, these facts demonstrate that, acting as a "corporate combine," Defendants transacted business in New York based on a contract to procure the dampers from Taylor by Walbridge Mexico, and that Taylor's claim against Defendants for the unpaid balance for the dampers, as required by such contract and as "formalized" by the Purchase Order, Taylor Affidavit ¶ 28; Purchase Order at 1, arises

---

[11]   Kameg denies making any statements attributed to him by Taylor and, instead, avers he attended the testing meeting as a matter of inter-corporate assistance provided by Walbridge Company to its affiliated company, Walbridge Mexico.  Kameg Affidavit ¶¶ 4, 6.

from such transaction.  Plaintiff's Memorandum at 13, 16-17.  Finally, Taylor contends

that, contrary to Defendants' assertions, the production and sale of the dampers in New

York demonstrate a substantial relationship with New York including the availability of

key witnesses in New York, rather than in Mexico, and, as such, Walbridge Mexico's

alternative request for dismissal based on *forum non conveniens* should also be

rejected.  Plaintiff's Memorandum at 18-19.

Defendants deny that either the Walbridge Company or Walbridge Group have

any ownership interest in Walbridge Mexico, and represent that Walbridge Mexico

operates independently through its own officers, including a controller, and marketing

and accounting departments.  Dyze Affidavit ¶ 19.  However, in Defendants' Reply,

Walbridge Company conceded it is authorized to do business in New York, Defendants'

Reply at 10, conducts such business unrelated to the instant matter and, as such,

Walbridge Company withdrew its motion to dismiss.  *Id.*  Walbridge Mexico also admits

issuing the Purchase Order addressed to Taylor which called for installment payments

for the dampers to be made by Walbridge Mexico "directly" to Taylor.  *Id.* at 2.

However, Defendants insist that the initial payment of $300,000 sent by Walbridge

Mexico to Taylor, were proceeds from funds transferred to Walbridge Mexico by

Walbridge Company based on a prior intercorporate obligation between the two

companies unrelated to acquisition of the dampers, and therefore did not constitute

evidence that Walbridge Company had ignored the corporate form for conducting its

business in relation to Walbridge Mexico or so dominated Walbridge Mexico as to

support a finding that Walbridge Company and Walbridge Mexico should be treated as

a single entity supporting personal jurisdiction over Walbridge Mexico in this court.  *Id.*

at 2-3 n. 2.[12]

The parties do not dispute that in a diversity action, like the case at bar, a federal district court in considering dismissal based on a lack of personal jurisdiction applies the law of the state in which the court sits, in this instance, New York.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (citing *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998)); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *Vendetti v. Fiat Auto S.P.A.,* 802 F.Supp. 886, 889 (W.D.N.Y. 1992) (citing cases).  Neither do the parties dispute that the applicable New York law for determination of whether Defendants Walbridge Group and Walbridge Mexico, as nondomiciliaries, are subject to personal jurisdiction in this court is Section 302 (a)(1) of the New York Civil Practice Law & Rules which provides, in relevant part, for long-arm jurisdiction over a cause of action against a nondomiciliary who, "in person or through an agent . . . transacts any business in" New York.  N.Y. Civ. Prac. L. & R 302(a)(1) (McKinney 1990-1999 Supp) ("N.Y. CPLR § 302(a)(1)" or " § 302(a)(1)").[13]  If the court finds upon the record the existence of such long-arm jurisdiction, it must also consider whether the exercise of *in personam* jurisdiction in the particular case also satisfies due process as required under the Fourteenth Amendment.  *Best Van Lines*, 490 F.3d at

---

[12] Plaintiff does not rely on Defendants' representation that Walbridge Company and Walbridge Mexico have some common officers and directors, Walbridge Company and Walbridge Group Memorandum at 17, to support Plaintiff's *alter ego* or "corporate combine" theories of liability and jurisdiction over these Defendants.

[13] Although Walbridge Mexico argues it has not contracted to provide goods or services in New York, an alternative ground for long-arm jurisdiction under § 302(a)(1), Walbridge Mexico Memorandum at 13, Plaintiff has not asserted this basis for jurisdiction over Defendants.  Plaintiff's Memorandum *passim*. Walbridge Company's concession it is authorized to do business in and is thus subject to personal jurisdiction in New York is discussed, *infra*, at 24-25.

242 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)); *Bensusan Restaurant Corporation v. King*, 126 F.3d 25, 27 (2d Cir. 1997).  Specifically, § 302(a)(1) "is a 'single act statute' and 'proof of one transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the state, so long as the [defendant's] activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Daniel v. American Bd. of Emergency Medicine*, 988 F.Supp. 127, 229 (W.D.N.Y. 1997) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988)).

The conduct sufficient to fall within the reach of N.Y. CPLR § 302(a)(1) based on a nondomiciliary's transaction of business in New York is broadly defined, *Best Van Lines*, 490 F.3d at 247 n. 10 (citing *Padilla v. Rumsfeld*, 352 F.3d 695, 707 (2d Cir. 2003), *rev'd on other grounds*, 542 U.S. 426 (2004)) (citing New York caselaw), and provided the nondomiciliary, by its actions, "'purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws,'" such exercise of long-arm jurisdiction will not offend federal due process requirements.  *McKee Elec. Co. v. Rauland-Borg Corp.,* 229 N.E.2d 604, 607 (N.Y. 1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Best Van Lines*, 490 F.3d at 247.  However, in making such determination, courts must evaluate the "quality and nature," of a nonresident defendant's contacts with New York under a "totality of the circumstances test," *Best Van Lines*, 490 F.3d at 242  (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 485-86 (1985), "'such that the [nonresident defendant] should reasonably anticipate being haled into court [in New York].'" *Rudzewicz, supra,* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444

U.S. 286, 297 (1980)).

Under New York law, "evaluation of jurisdiction pursuant to [N.Y. CPLR] § 302(a)(1) should be based on the totality of the circumstances surrounding the transaction." *Cooper, Robertson & Partners, LLP v. Vail*, 143 F.Supp.2d 367, 370 (S.D.N.Y. 2001) (citing *Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975)); *see also Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) (citing cases) ("ultimate determination [of long-arm jurisdiction] is based on the totality of the circumstances"). To meet the criteria of § 302(a)(1), it is not essential that a contract with the nondomiciliary be consummated in New York, either directly or through an agent, for the nondomiciliary's contacts with New York to constitute the requisite transaction of business. *Deutsche Bank Securities, Inc. v. Montana Board of Investments*, 850 N.E.2d 1140, 1143 (N.Y. 2006) (New York plaintiff's offer to purchase bonds communicated from New York and accepted in Montana by Montana defendant-seller sufficient to constitute transaction of business in New York where seller "knowingly initiat[ed] and pursu[ed] . . . negotiation with [New York purchaser]); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Incorporated*, 209 N.E.2d 68, 75 (N.Y. 1965) (Fuld, J.) (contract formed in Illinois did not defeat long-arm jurisdiction over breach of contract action in New York where Illinois defendants met in New York with plaintiff to discuss performance problems and installed and tested new machines provided under supplemental agreement executed in New York). *See Cooper, Robertson & Partners, LLP*, 143 F.Supp.2d at 371-72 (contract negotiated by defendant's agents in New York and executed by defendant in Ohio for architectural services to be substantially performed in New York held sufficient to

constitute transaction of business in New York pursuant to § 302(a)(1)).

As relevant to the instant case, a nondomiciliary defendant's contractual relationship with a New York corporation and subsequent entry into New York by the defendant for the "purpose of meeting with parties to the contract regarding the [contractual] relationship," regardless of where formed, are relevant to whether the defendant had sufficiently transacted business in New York to warrant the exercise of jurisdiction under § 302(a)(1).  *Agency Rent A Car System*, 98 F.3d at 29 (performance by defendants in New York of contract executed by plaintiff in Massachusetts); *Longines-Wittnauer*, 209 N.E.2d at 75, (trouble-shooting and testing of product delivered in New York in furtherance of contract executed in Illinois); *Opticare Acquisition Corp. v. Castillo*, 806 N.Y.S.2d 84, 90 (App. Div. 2d Dep't 2005) (upholding exercise of personal jurisdiction against nonresident former employees under § 302(a)(2), in action brought by New York employer alleging breach of confidentiality provisions of employment agreements, even if employees were not physically present within New York when the agreements were signed or to conduct business on behalf of employer, where employees had systematic, ongoing relationships with New York employer, and claims asserted against employees arose out of the employment agreements and their post-agreement business activities).

A plaintiff may defeat a motion to dismiss for lack of personal jurisdiction brought prior to discovery by making a *prima facie* showing of personal jurisdiction either through "legally sufficient allegations of jurisdiction" in the pleadings, *Ball v. Metallurgie Hoboken-Overpelt*, *S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854 (1990), or through its own affidavits and supporting materials.  *Marine Midland Bank, N.A. v.*

*Miller*, 664 F.2d 899, 904 (2d Cir. 1981).  *See also Agency Rent A Car System*, 98 F.3d at 28 (court will accept plaintiff's complaint and affidavits as true for purposes of resolving motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2)) (citing *Hoffritz For Cutlery*, 763 F.2d at 56-57).  In deciding a motion to dismiss for lack of personal jurisdiction, the court has discretion to proceed either upon written submissions or through a full evidentiary hearing on the merits.  *Miller*, 664 F.2d at 904.  Absent discovery or a full evidentiary hearing, the pleadings and affidavits are construed, and any ambiguity is resolved, in favor of the plaintiff.  *Hoffritz for Cutlery*, 763 F.2d at 57; *Miller,* 664 F.2d at 904.

Such a *prima facie* showing does not, however, satisfy the ultimate requirement that a plaintiff establish personal jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial.  *Id.*  Nevertheless, until an evidentiary hearing is held, a *prima facie* showing of personal jurisdiction is sufficient to withstand a motion to dismiss.  *Id.*  This principle "remains true notwithstanding a controverting presentation by the moving party."  *Hoffritz for Cutlery*, 763 F.2d at 57 (citing cases).  A plaintiff makes a *prima facie* showing of personal jurisdiction when the unrebutted allegations or averments reasonably support a finding that the prerequisites for long-arm jurisdiction have been established.  *Agency Rent A Car System*, 98 F.3d at 27-28 (court may rely on undisputed allegations in complaint and affidavits in determining whether plaintiff has made *prima facie* showing of personal jurisdiction over defendant).  Accordingly, as no discovery relative to the issue of personal jurisdiction has yet been conducted and the court declines to conduct an evidentiary hearing, at this point, Taylor need make only a *prima facie* showing based on the Complaint, affidavits and exhibits that personal

24

jurisdiction exists over Defendants in order to defeat Defendants' motion.

       a.     <u>Walbridge Company</u>.

       As noted, Facts, *supra*, at 4, Walbridge Company now concedes it is authorized to do business in New York, Defendants' Reply at 10, is therefore subject to personal jurisdiction in connection with Taylor's claims, and withdraws its motion to dismiss. *Id*. Accordingly, Walbridge Company's motion should be DISMISSED as moot. *See ESI, Inc. v. Coastal Corp.*, 61 F.Supp.2d 35, 57 (S.D.N.Y. 1999) (holding defendants, by conceding presence in New York, were subject to personal jurisdiction in New York pursuant to N.Y. CPLR § 301).

       b.     <u>Walbridge Group</u>.

       The court thus turns to the merits of Walbridge Group's motion.  Although Walbridge Group contends Taylor has abandoned its attempt to establish personal jurisdiction over it, Taylor unambiguously seeks to impose jurisdiction over Walbridge Group based on its majority ownership in Walbridge Company and, through Walbridge Group's ownership of Walbridge International, over Walbridge Mexico, based on Walbridge International's 80% ownership of Walbridge Mexico thereby demonstrating the existence of a "corporate combine."  Plaintiff's Memorandum at 15.  Where jurisdiction over a holding company like Walbridge Group[14] is based on the activity of a subsidiary or a related company in the forum state by application of the *alter ego* doctrine, such activity in itself is insufficient to support extending personal jurisdiction to

---

[14] Although Walbridge Group does not specifically characterize itself as a holding company, a fair reading of the record points to such characterization, and neither Walbridge Group nor Taylor argues otherwise.

the holding company or parent.  *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-21 (2d Cir. 1984) (citing *Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 204 N.E.2d 329, 331 (N.Y. 1965) (applying N.Y. Civ. Prac. L. & R. § 301 - doing business test)).  Rather, for there to be personal jurisdiction over a nonresident holding company or a corporate parent based upon the actions of a related company or subsidiary, such entity must be shown to be an "agent" or "mere department" of the nonresident holding company or parent.  *Jazini v. Nissan Motor Company, Inc.,* 148 F.3d 181, 184 (2d Cir. 1999) (citing *Koehler v. Bank of Bermuda, Ltd.,* 101 F.3d 863, 865 (2d Cir. 1996)).

That a subsidiary is an agent of the parent corporation may be established by showing that the subsidiary "does all the business which [the parent corporation] could do were it here [New York] by its own officials."  *Frummer v. Hilton Hotels Int'l, Inc.*, 227 N.E.2d 851, 854 (N.Y.), *cert. denied*, 389 U.S. 923 (1967).  Further, "[a] subsidiary will be considered a 'mere department,' sufficient to extend jurisdiction over the parent, only if the foreign parent's control of the subsidiary is so pervasive that the corporate separation is more formal than real."  *Porter v. LSB Industries, Inc.*, 600 N.Y.S.2d 867, 873 (4th Dep't 1993).  In determining whether personal jurisdiction exists on the basis that the subsidiary is a "mere department" of the parent, the court must consider four factors including (1) common ownership, which is "essential," (2) the subsidiary's financial dependency on the parent, (3) the degree to which the parent is involved in the selection and assignment of the subsidiary's executive personnel and failure to observe corporate formalities, including overlapping officers and directors, and (4) the amount of control exercised by the parent over the subsidiary's marketing and operational policies.

*Jazini*, 148 F.3d at 184 (citing *Beech Aircraft*, 751 F.2d at 120, 121-22); *ESI, Inc.*, 61 F.Supp.2d at 51-52 (where parent corporation conceded to being present in New York, parent corporation's ownership interest in affiliated subsidiary, including nearly identical ownership interest, affiliate's financial dependency on parent corporation for operation and existence, "massive overlap" of corporate officers and directors between parent and affiliate, and affiliate was merely holding company formed to finance, own, operate and manage parent corporation's business in foreign country, was sufficient to subject affiliate holding company to personal jurisdiction in New York).

Here, Taylor fails to make a *prima facie* showing that in functioning as a holding company, including any indirect ownership of Walbridge Mexico through Walbridge Group's ownership of Walbridge International, Walbridge Group has failed to observe corporate formalities with respect to Walbridge International or Walbridge Mexico.  Even assuming Kameg, as an officer of Walbridge Company, acted as Walbridge Mexico's or Walbridge Company's agent in participating in the inspection and testing of the dampers in New York, no facts demonstrate Walbridge Group directed or benefitted from such conduct through either Walbridge Company's business operations in New York or Walbridge International's ownership relationship with Walbridge Mexico.  Nor does the fact that Walbridge Company and Walbridge Mexico share offices in Detroit, as printed on Mr. Gonzalez Almarez's business card, support a finding that Walbridge Group conducts, directly or indirectly, either of these company's day-to-day business activities. *ESI, Inc.*, 61 F.Supp.2d at 51-57.  Further, even assuming Kameg did state to Taylor that Walbridge Mexico was Walbridge Company's "paper corporation," for purposes of construction projects in Mexico, and that Walbridge Company was actually "running the

27

show," *i.e.*, constructing the project and purchase of the dampers, Plaintiff's

Memorandum at 15; Taylor Affidavit ¶¶ 18, 20,  such statements do not demonstrate

Walbridge Group's failure to respect the corporate form in relation to Walbridge

Company or Walbridge Mexico.  Nor is the fact that Walbridge Company is subject to

jurisdiction in New York sufficient to establish, *prima facie,* that Walbridge Group's

relationship to Walbridge Company, constitutes a single "corporate combine" subject to

New York jurisdiction.

　　　Rather, the facts appearing on this record reasonably support a finding that

Walbridge Group operates independently of Walbridge Company and Walbridge

Mexico, and that Walbridge Group has no significant control over Walbridge Mexico

either through the Walbridge Company, Walbridge International, or Walbridge Group's

interaction with these entities.  Dyze Affidavit ¶ 19; Haro-Martinez Declaration ¶ 3.  In

particular, Taylor proffers no evidence showing Walbridge Group shares key officers

and directors with Walbridge Company, Walbridge International or Walbridge Mexico,[15]

or that Walbridge Group provides a substantial source of the operating capital for these

companies.  Nor does Taylor contend that Walbridge Company's admitted overlapping

of some of its directors and officers with Walbridge Mexico involves Walbridge Group

through its majority ownership of Walbridge Company sufficient to find Walbridge Group

involved with the regular conduct of Walbridge Company's and Walbridge Mexico's day

to day business operations.  In any event, the record does not demonstrate such

overlapping of directors and officers to be excessive.  *See ESI, Inc.*, 61 F.Supp.2d at

---

[15]  For example, Mr. Dyze avers only that he is an officer of Walbridge Company.  Dyze Affidavit ¶
1.

51-52.

Taylor's reliance on the single transfer of funds from Walbridge Company to Walbridge Mexico does not, without more, implicate Walbridge Group in such transaction.  Nothing in the record supports a finding that Walbridge Company is financially dependant on Walbridge Group.  Walbridge Group's majority ownership of Walbridge Company is insufficient to support personal jurisdiction, and Plaintiff's other allegations are too conclusory to support finding personal jurisdiction over Walbridge Group.  *See Jazini*, 148 F.3d at 184 (conclusory allegations do not constitute a *prima facie* showing of a jurisdictional basis).  Thus, Taylor fails to show, *prima facie*, that as part of a "corporate combine" with the other Defendants, Walbridge Group is present in New York through the Walbridge Company, or that it transacted business in New York through Walbridge International or Walbridge Mexico, on an *alter ego,* or any other, basis, and Walbridge Group's motion should therefore be GRANTED.

     c.    <u>Walbridge Mexico</u>.

However, the court finds that Plaintiff has established a *prima facie* showing, under the totality of circumstances presented here, *Agency Rent A Car System*, 98 F.3d at 29 (citing *PaineWebber, Inc. v. Westgate Group, Inc.*, 748 F.Supp. 115, 118 (S.D.N.Y. 1990)), that Walbridge Mexico transacted business in New York sufficient to establish long-arm jurisdiction pursuant to N.Y. CPLR § 302(a)(1) over Plaintiff's cause of action.

First, it is irrelevant whether a contract for the dampers between Walbridge Mexico and Taylor was formed in New York as the question under § 302(c)(1) is not whether a nondomiciliary defendant contracted in New York for goods or services with a

29

New York resident, but whether the nondomiciliary "transacted any business" in New York.  N.Y. C.P.L.R. § 302(a)(1).  As the New York Court of Appeals stated, "even though the last act marking the formal execution of the contract may not have occurred within New York, the statutory [§ 302(a)(1)] test may be satisfied by a showing of other purposeful acts performed by [a nondomiciliary] in . . . [New York] in relation to the contract, albeit preliminary or subsequent to its execution."  *Longines-Wittnauer*, 209 N.E.2d at 75 (underlining added).  Thus, while formation of a contract in New York, by execution or acceptance of an offer, is sufficient to demonstrate a transaction of business for purposes of §302(a)(1), *see Hoffritz for Cutlery*, 763 F.2d at 60 n. 2 (defendant's execution of contract in New York is "clearest sort of case" for long-arm jurisdiction pursuant to § 302(a)(1)) (citing *Parke-Bernet Galleries, Inc. v. Franklyn*, 256 N.E.2d 506, 507 (N.Y. 1970) (acceptance of bid at auction in New York via telephone call from nonresident defendant); *Elman v. Belson*, 302 N.Y.S.2d 961, 964 (2d Dep't 1969) (retaining attorneys in New York by defendant's Illinois attorneys constitutes transaction of business in New York), it is not necessary to the exercise of long-arm jurisdiction under §302(a)(1).  *Longines-Wittnauer*, 209 N.E.2d at 75 (contract formed in Illinois but subsequent actions in New York by defendant's agent supported long-arm jurisdiction pursuant to § 302(a)(1)); *Deutsche Bank Securities*, 850 N.E.2d at 1143 (contract accepted in Montana as a result of defendant's out-of-state contacts through communications with plaintiff in New York); *Cooper, Robertson & Partners, LLP*, 143 F.Supp.2d at 371-72 (contract accepted in Illinois, negotiated by defendant's agents in New York, for performance in New York by New York plaintiff).  Rather, questions of personal jurisdiction under N.Y. CPLR § 302(a)(1) are "'necessarily fact sensitive

because each case is dependent upon its own particular circumstances.'" *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997) (quoting *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1991)).

Here, the record reasonably supports an inference that when negotiating with DIS concerning its acquisition of the dampers, Walbridge Mexico was well-aware that it was proposing to enter into a contract with Taylor, albeit one not in writing and signed by both itself and Taylor, Taylor Affidavit ¶ 11 ("Plaintiff did not sign any 'contract, document' in relation to this transaction"), whereby Taylor was to manufacture in New York the dampers according to Walbridge Mexico's specifications as communicated by DIS to Taylor, *id.*, ¶¶ 3, 4, and Walbridge Mexico was to pay Taylor the purchase price in New York and sent its agents to New York to inspect and test the dampers before paying the balance of the purchase and shipment to Mexico.  It is undisputed that correspondence between DIS, Taylor's sales representative in Mexico, and Walbridge Mexico, copied Mr. Paul Tuttobene, an engineer at Taylor, Defendants' Reply Exhs. A (the DIS Proposal), and D (the DIS Final Budget), and that the Letter of Intent sent to DIS acknowledges that the dampers were to be "manufactured by Taylor."  *Id.* Exh. C.  That Walbridge Mexico understood the Letter of Intent was to be forwarded to Taylor by DIS, is confirmed by the undisputed fact that Taylor issued to Walbridge Mexico the Sales Order which specifically referenced that it was issued in response to the Letter of Intent.  Taylor Affidavit ¶ 10; Taylor Affidavit Exh. D.  Significantly, Walbridge Mexico does not deny issuing the Letter of Intent nor receipt of the Sales Order.  Thus, based on the record, Taylor has established that it received the Letter of Intent as Walbridge Mexico's offer to purchase the dampers which Taylor accepted in New York by issuance

of the Sales Order.

Regardless of where, or exactly how, the contract for manufacture and purchase of the dampers was formed, Walbridge Mexico admits it "had a contractual relationship with Taylor" for the dampers.  Walbridge Mexico Memorandum at 9.  The existence of a "contractual relationship" between a nondomiciliary and a New York corporation is a relevant factor in determining whether the nondomiciliary has transacted business in New York.  *Agency Rent A Car System*, 98 F.3d at 29 (citing *George Reiner & Co. v. Schwartz*, 363 N.E. 2d 551 (N.Y. 1977)).  Additionally, Mr. Haro-Martinez, Walbridge Mexico's General Director, acknowledges that Walbridge Mexico also had a contract with DIS which described the "services to be performed by DIS and Taylor Devices" for Walbridge Mexico.  Haro-Martinez Declaration ¶ 7 (referring to the Walbridge Mexico-DIS Agreement, Walbridge Mexico's Exh. B) (underlining added).  A fair reading of the Walbridge Mexico-DIS Agreement indicates that the sole "service" to be provided by Taylor to Walbridge Mexico is the manufacture and delivery of the dampers.  Such interpretation is corroborated by Mr. Kameg who understood that "Walbridge Mexico was using a company called Taylor Devices, Inc." and that "Taylor Devices received the subcontract" for the dampers from Walbridge Mexico.  Kameg Declaration ¶ 5 (underlining added).  It also was Mr. Kameg's understanding, before he visited Taylor's facilities to inspect the dampers, "that an agreement between Walbridge Mexico and Taylor Devices had already been reached."  *Id.* (underlining added).  Mr. Haro-Martinez and Mr. Kameg's understanding of the substance of the business relationship or contract between Walbridge Mexico and Taylor is further confirmed by the undisputed fact that in response to Taylor's later request to confirm the existence of a contract

between Walbridge Mexico and Taylor for the dampers, Walbridge Mexico issued the Purchase Order showing the same purchase price for the dampers, $864,000, as stated in the Sales Order albeit with a different payment schedule and discount.

In furtherance of their contract with Taylor for the dampers, Walbridge Mexico also forwarded an initial payment of $300,000 to Taylor's account in New York, and later sent a team to Taylor's facilities to inspect and accept the dampers.  That the representatives came to New York to assess the technical progress of Taylor's production of the dampers and their compliance with Walbridge Mexico's specifications for the dampers in furtherance of the contract removes any risk that jurisdiction over Walbridge Mexico will be predicated on a casual business visit with Taylor.  *See McKee Elec.*, 229 N.E.2d at 607 (no jurisdiction based on contacts in New York where nondomiciliary's representatives "happen to pass the time of day with New York customer in New York.")  The May 2004 visit to Taylor by Walbridge Mexico's representatives was not casual nor unrelated to Walbridge Mexico's contractual relationship with Taylor to acquire the dampers.  Rather, it was calculated and purposeful, and constituted an important step in the performance of the contract to the benefit of Walbridge Mexico and Taylor.

Walbridge Mexico's contention that it contracted in Mexico for the dampers with DIS, not Taylor, Walbridge Mexico Memorandum at 12, and therefore did not purposefully avail itself of the benefits of conducting business in New York is negated by several facts.  First, it is undisputed that both Walbridge Mexico and Taylor expected the payments for the dampers to be made directly to Taylor in New York, and there is nothing in the record to support the notion that other than facilitating Taylor's

manufacture and sale of the dampers directly to Walbridge Mexico, DIS had any responsibility for the production of the dampers, other than making importation arrangements and supervision of installation of the dampers following delivery at the project site.  Moreover, both the Sales Order and the Purchase Order confirm that the dampers were to be shipped from New York to the project site in Mexico City.  Given that the entire purchase price was to be sent by Walbridge Mexico to Taylor in New York and that shipment was to be directly to the project site, thus implying title to the dampers would pass from Taylor to Walbridge Mexico upon their delivery, it is not realistic, based on the present record, to conclude that Walbridge Mexico believed it had contracted for the manufacture or resale of the dampers from DIS acting as Taylor's distributor or agent in Mexico.  Significantly, Walbridge Mexico does not contradict Taylor's sworn representations that when Taylor requested the Purchase Order, to confirm its business arrangement with Walbridge Mexico, Walbridge Mexico did not resist the request by asserting the Walbridge Mexico-DIS Agreement and Addendum as the exclusive contract for the dampers.  Taylor Affidavit ¶ 28; Ferdman Affidavit ¶ 16. Rather, the record is replete with evidence, which, if believed by a fact trier, demonstrates that in ordering the dampers from Taylor, whether directly with Taylor or indirectly through DIS, and subsequently sending a substantial sum of money and business representatives to New York in furtherance of its admitted "contractual relationship," with Taylor, Walbridge Mexico engaged in "purposeful activities" in New York, and that there exists "a substantial relationship between the transaction and the

claim asserted" by Taylor.  *Kreutter*, 522 N.E.2d at 43 (citing cases.)[16]

Although Walbridge Mexico does not specifically argue that Taylor's cause of

action does not arise out of such transaction of business, the court finds that having

tested and accepted the dampers while in New York, Walbridge Mexico's subsequent

failure to make further payments of the $520,000 balance due on its contract with Taylor

establishes a substantial relationship between Taylor's cause of action based on

Walbridge Mexico's alleged breach of a contract with Taylor.  *See Daniel*, 988 F.Supp at

229 (claim arises from transaction of business if there exists a "substantial relationship"

between asserted claim and transaction giving rise to jurisdiction).

Walbridge Mexico's alternative arguments in support of dismissal, *i.e.*, that (i) to

find *in personan* jurisdiction on this record would violate federal due process

requirements, Walbridge Mexico Memorandum at 12-13, (ii) the forum selection clause

in the Addendum directs that litigation over disputes arising on the Walbridge Mexico-

DIS Agreement and Addendum be sued in Mexico courts, *id.* at 5, 9, 13, and (iii) the

action should be dismissed based on *forum non-conveniens*, *id.* at 13-16, are also

unavailing.

First, due process is not offended where the evidence supports a finding that a

nondomiciliary purposefully availed itself of the privilege of conducting activities in a

forum state thereby invoking the benefits and protections of its laws.  *McKee Elec.,* 229

---

[16] Alternatively, as the court is required to accept as a motion challenging personal jurisdiction without discovery, Plaintiff's affidavits as true, *PDK Labs*, 103 F.3d at 1108, based on Walbridge Company conceding jurisdiction in New York and the statements made by Kameg to Taylor that Walbridge Mexico is a shell corporation controlled by Walbridge Company, notwithstanding Kameg's denials, jurisdiction should also be extended over Walbridge Mexico on that basis as well.  *See Jazini*, 148 F.3d at 184-85 (shell corporation subject to court's jurisdiction based on parent company's presence in New York).

N.E.2d at 607 (quoting *Hanson*, 357 U.S. 253).  If the "nature and quality" of the defendant's contacts with the forum state support finding that the defendant should have reasonably anticipated being subject to process in the forum state's courts, federal due process is satisfied. *Rudzewicz*, 471 U.S. at 474-76; *Best Van Lines*, 490 F.3d at 243.  Here, the record establishes, *prima facie*, Walbridge Mexico was well-aware it was dealing with Taylor, a New York supplier of seismic dampers, both through Taylor's representative, DIS, in Mexico and in direct contacts with Taylor, *i.e.*, receipt of the Sales Order from Taylor and issuance of the Purchase Order to Taylor, and, as well, acknowledges it thereby had established a "contractual relationship" with Taylor. Walbridge Mexico Memorandum at 9.  In furtherance of this contractual relationship, Walbridge Mexico forwarded, in February 2004, $300,000 to Taylor's bank account in New York to induce Taylor's production of the dampers, and later, in May 2004, sent to New York several representatives, including at least one of its employees, to inspect and accept the dampers manufactured by Taylor.  Upon these facts, Walbridge Mexico's assertion that it did not thereby purposefully avail itself of the privilege of engaging in a commercial transaction in New York through its acquisition of the dampers is unpersuasive.  Taken as a whole, the record fairly supports a finding that Walbridge Mexico "knowingly initiat[ed] and pursu[ed] a negotiation with" Taylor, directly or through DIS, for the manufacture in New York of specifically designed seismic dampers. *Deutsche Bank Securities*, 850 N.E. 2d at 1143.  Coupled with sending $300,000 to Taylor and a team of representatives to inspect the dampers, such activities represent substantial contacts with New York directly relating to Taylor's claim and, as such, Walbridge Mexico was reasonably on notice that a breach of the contract

could subject it to litigation in New York courts.  Moreover, for the same reasons, there

is no basis for Walbridge Mexico's contention, Walbridge Mexico Memorandum at 13,

that sustaining long-arm jurisdiction over it in this case would be otherwise

unreasonable thereby depriving it of due process.[17]

Second, Walbridge Mexico argues that the forum selection provision in the

Addendum requires dismissal, Walbridge Mexico Memorandum at 9.  While such a

contention is relevant to a determination under § 302(a)(1), *Agency Rent A Car System*,

98 F.3d at 29, in order to be enforceable, a mandatory choice-of-forum clause must

have been "communicated" to the resisting party to the contract.  *Phillips v. Audio

Active, Ltd.*, 494 F.3d. 378, 383 (2d Cir. 2007).  Walbridge Mexico makes no attempt to

rebut Taylor's insistence that Taylor was not a party to the Walbridge Mexico-DIS

Agreement or the Addendum, and that even if it were considered to be party to the

Agreement through DIS acting as its agent, Taylor had, prior to filing the instant motion,

no awareness of the existence of such agreement or the choice-of-forum clause in

particular.  Taylor Affidavit ¶ 24.  Because neither the Letter of Intent, the Sales Order,

nor the Purchase Order contain any such forum selection provision, Taylor's claims

based on the contract between it and Walbridge Mexico are not subject to the forum

selection provision.  Moreover, the forum selection provision cannot be enforced against

---

[17]  Walbridge Mexico asserts that while DIS may, in its capacity as Taylor's representative, have "purposely availed itself of the privilege of conducting business in New York, the same cannot be said of Walbridge de Mexico."  Walbridge Mexico Memorandum at 12.  Walbridge Mexico also contends that Taylor "arranged to provide services to a foreign entity (Walbridge Mexico) in Mexico under a Mexican contract" with DIS, and as a result Taylor is bound to the forum selection provision in such contract. Walbridge Mexico Memorandum at 13.  How DIS could act on its own behalf, as Walbridge Mexico's subcontractor, in contracting with Taylor for the dampers and, at the same time, bind Taylor to the contract DIS had with Walbridge Mexico, as Taylor's agent, is not explained by Walbridge Mexico.

Taylor because Taylor's claims against Walbridge Mexico for non-payment of the purchase price for the dampers are not conditioned on the services DIS was required to perform for Walbridge Mexico as described in the Agreement and Addendum, *i.e.*, arranging for the shipment and importation of the dampers, and supervision of their installation.  *See Burrows Paper Corp. v. Moore & Associates*, 2007 WL 2089682, * 3 (N.D.N.Y. Jul. 20, 2007) (discussing that a signatory to a contract may invoke a forum-selection clause against a non-signatory if the non-signatory "is closely related to the dispute such that it becomes foreseeable that it will be bound") (internal quotation omitted).  Accordingly, even if Taylor were shown to have been aware of the forum selection provision in the Addendum, the provision is inapplicable to Taylor's claims and, as such, does not avoid personal jurisdiction over Walbridge Mexico in this court.

Finally, Walbridge Mexico seeks dismissal based on *forum non-conveniens*. Specifically, Walbridge Mexico contends that under the factors recognized by courts relevant to the question of *forum non-conveniens* as applied to the facts of the instant case, its motion should be granted.  Walbridge Mexico Memorandum at 13-16. Taylor opposes this request.  Taylor Memorandum at 17-19.  Courts engage in a two-part analysis in applying the *forum non-conveniens* doctrine.  *Gross v. British Broadcasting Corporation*, 386 F.3d 224, 230 (2d Cir. 2004).  First, consideration is given to private interest factors including deference to the plaintiff's choice of forum.  *Id*.  A second consideration is the existence of an adequate alternative forum.  *Id*.  Other private factors to be considered include the relative ease of and access to proof, including the availability of compulsory process to secure attendance of witnesses, the enforceability of resulting judgments, issues of expeditious trial and expenses in producing evidence,

as well as hardship to the plaintiff if the action were transferred to the alternative forum. *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001); 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – Civil § 111.74[3][c][i].  Relevant public factors include court congestion, local interest in resolution of the case, jury duty burdens upon the forum state lacking any significant interest in the subject of the lawsuit, forum familiarity with governing law and related avoidance of potential conflict of law issues and problems in application of foreign law.  *Id.*

Here, because Taylor is the plaintiff in this action, deference should be given to Taylor's choice of a New York forum.  The amount in controversy is substantial, Taylor is a local company, and there is presently no justification offered for the alleged breach by Walbridge Mexico.  Although Walbridge Mexico emphasizes that the dampers were intended for installation in a construction project located in Mexico, Walbridge Mexico Memorandum at 15, it fails to explain why such a geographical fact is relevant to any of Taylor's claims or its potential defenses.  Taylor Memorandum at 19.  Similarly with regard to the asserted cost of conducting depositions in Mexico, Walbridge Mexico does not explain how all of its Mexico-based personnel who had any connection with the damper acquisition from Taylor would be necessary witnesses; rather, Taylor's contention that few such persons, other than Mr. Haro-Martinez who dealt with Taylor through DIS and sent the $ 300,000 payment to Taylor, would be relevant fact witnesses is more likely to be correct.   Taylor Memorandum at 18.  Additionally, because no answer has been served and thus no defenses have yet been asserted by Walbridge Mexico, it is uncertain whether a failure by Taylor to produce the dampers in accordance with Walbridge Mexico's specifications may even be an issue in the

litigation.  Such a defense, if asserted, would likely involve expert inspection and evaluation of the dampers which remain stored in New York.  Moreover, as Walbridge Company will continue as a party to the action, its probable witness list will be limited to Mr. Kameg, who is located not in Mexico, but in Michigan.  While Mexico has an interest in the performance of the dampers in connection with a major construction project located in its territory, here the alleged breach, a cancellation of production before delivery, has no apparent relationship to such a potential issue.

Walbridge Mexico relies on other factors in support of its motion, but fails to explain why they point to Mexico as the more convenient forum.  Walbridge Mexico Memorandum at 13-15.  For example, no explanation is offered by Walbridge Mexico as to why process from this court is not available against Walbridge Mexico in Mexico.  Additionally, why this court's judgment may encounter difficulty of enforcement in Mexico, or why trial in Mexican courts would be more expeditious than in this court, despite its admittedly busy calendar, also is not addressed by Walbridge Mexico.

Regarding the relevant public factors, there is little doubt as to this community's interest in resolution of a substantial breach of contract dispute between a prominent local company and a foreign purchaser of its products.  Even assuming the applicability of Mexican law, Walbridge Mexico fails to demonstrate that this court could not ascertain, with reasonable accuracy, and apply such foreign law.[18]  Thus, the court finds

---

[18] Although not discussed by the parties, New York choice of law rules for contract disputes call for application of the law of the jurisdiction where the "center of gravity" or most significant contacts with the dispute exists.  *Auten v. Auten*, 124 N.E.2d 99, 101-02 (N.Y. 1954).  Here, given that Walbridge Mexico's offer to purchase the dampers was accepted by Taylor in New York, the custom design and manufacture and inspection of the dampers took place in New York, and payment was to occur in New York, New York, not Mexican, law is likely to be applicable.

no basis to believe there exists a significant risk of problems in conflicts of law or application of foreign, *i.e.*, Mexican, law avoidable only by dismissal based on *forum non conveniens*.  While Walbridge Mexico assumes, based on the forum selection provision, the applicability of Mexican law to the dispute and attendant burdens of translation, Walbridge Mexico Memorandum at 15, such assertion ignores whether the choice of forum provisions in the Addendum[19] are even applicable to Taylor's claims given that such claims arise directly upon Taylor's contract with Walbridge Mexico as evidenced by the Letter of Intent, the Sales Order and the Purchase Order, as well as Taylor's performance, and regardless of the Walbridge Mexico - DIS Agreement for services to the project by DIS.  None of these documents contain any forum selection provision. Moreover, Walbridge Mexico's contention overlooks the reasonable possibility of use of an expert witness by the parties to give testimony regarding the substance of such Mexican laws, should it eventually be determined that Mexican law is applicable to this litigation.  Finally, although Walbridge Mexico's breach, by cancelling the contract and failing to pay Taylor the balance due, occurred in Mexico, this fact is outweighed by the other considerations relevant to Taylor's claim.  Therefore, Walbridge Mexico's alternate request for dismissal based on *forum non conveniens* should be DENIED.


## CONCLUSION

Based on the foregoing, Walbridge Company's motion (Doc. No. 5) should be DISMISSED as moot; Walbridge Group's motion (Doc. No. 5) should be GRANTED;

---

[19] The Addendum contains no choice of law provision.

and Walbridge Mexico's motion (Doc. No. 7) should be DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: December 20, 2007
      Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December 20, 2007
            Buffalo, New York